(No. 4117—)

HENRY VARNESS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed June 17, 1949.*

FLOYD L. BENSON, Attorney for Claimant.

HON. IVAN A. ELLIOTT, Attorney General, by WILLIAM COLOHAN, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Henry Varness, was employed on March 4, 1948 as a laborer by respondent in the Department of Public Works and Buildings of the Division of Highways. On that day, while throwing cinders on a pavement as he stood on a truck, claimant, 71 years of age, fell to the road. He was critically injured and was immediately taken to the office of Dr. E. J. Kabal, Sheridan, Illinois, and then rushed to the Horatio Woodward Hospital at Sandwich, Illinois.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act and the accident in question arose out of and in the course of the employment. Respondent furnished complete surgical, medical and hospital treatment.

The only question is the extent of permanent disability suffered by claimant.

Dr. Kabal attended to the injuries of claimant. He testified he was familiar with claimant's general health prior to the accident and that claimant was an active man engaged in manual labor possessing vigorous health for his age. Dr. Kabal stated that when he first examined Mr. Varness on account of the injuries in question he was hemorrhaging badly out of his right ear and nose and his condition was that of an emergency. He directed claimant to be immediately taken to the hospital and followed in his automobile. Upon arriving at the hospital Dr. Kabal described claimant's condition as follows:

"As he was being lifted from the car I could hear the crepitous bones in his shoulder and back grinding. His pulse was irregular, he was in shock and actively bleeding as stated before from the right ear and nose, he was barely semi-conscious, trembled considerably, couldn't talk at all, his eyes rolled considerably, and he would not respond to external stimulae or speech."

The results of Dr. Kabal's complete examination thereupon made at the hospital were related:

"Mr. Varness' reflexes were inactive; he was in shock, and his behavior and symptoms already referred to were indicative of severe concussion of the brain and basilar skull fracture. No X-rays were taken as it was impossible to keep him quiet, but bleeding from the nose and ear is prima facie evidence of fracture of the skull. His blood pressure was very low being 70 systolic and 50 diastolic, and his pulse was thready and intermittent. Compression fracture in the lumbar region of the spine, and fracture of the right transverse process of the third lumbar vertebrae were subsequently revealed by X-ray, but X-rays of the skull were unsatisfactory as even under medication he would not stay still. The injuries to the skull were later confirmed by Dr. E. W. Hagans, an ear specialist in Chicago."

Claimant was in a semi-conscious state for about three weeks requiring the attention of special nursing care. He was finally discharged from the hospital on April 14, 1948. At the time of discharge while he had

recovered from all fractures he was not able to sit up in a chair for more than a half hour period. He could not walk; tired easily; and suffered dizziness. However, it was determined that further hospitalization was of no advantage. Claimant was discharged from Dr. Kabal's care on June 30, 1948. Dr. Kabal said there was no medical treatment of which he had knowledge that could rehabilitate claimant's health. He described claimant as having lost his sense of balance tending to the right when walking; further, that Mr. Varness although using a cane cannot walk any distance without tiring to the degree that he begins to tremble. The claimant's hearing has been so acutely affected by the accident that it is impossible to get in touch with him by speech. Dr. Hagana in a report of the Division of Highways reported the loss on the right ear of 80.7 percent of hearing and on the left ear 100 percent of hearing. Dr. Kabal testified that the claimant as a result of the accident, has no capacity for gainful employment, and is beyond reasonable doubt completely, totally, and permanently disabled for work or employment.

Stipulation between the parties showed that the claimant during the year preceding the accident earned approximately $1,400.00, being at a wage rate of the labor maintenance man at 90 cents per hour on an eight hour day working 200 days per year; that the claimant at the time of said injury was 71 years of age and had no children under 16 years of age.

That all hospital expenses, medical expenses and other expenses have been paid by the respondent and there are no further claims made for such expenses.

From the undisputed medical testimony and the other testimony in the record it is shown that the claim-

ant is permanently disabled and has not been able, and is not able to do any work of any kind.

We conclude, therefore, that after a careful consideration of the record, that the claimant is entitled to an award for permanent total disability. We therefore make the following findings:

The claimant and the respondent were on the 4th day of March, 1948, operating under the provisions of the Workmen's Compensation Act; that on the date last mentioned above, said claimant sustained accidental injuries; and that said accidental injuries arose out of and in the course of his employment; that notice of said accident was given said respondent and claim for compensation on account thereof was made on said respondent within the time required under the provisions of said Act.

That the earnings of the claimant during the year next preceding the injuries were approximately $1,400.00.

That the claimant at the time of his injuries was 71 years of age and had no children under 16 years of age dependent upon him for support.

That all medical and hospital expenses and other expenses have been paid by the respondent, and that there are no further claims made for such expenses.

The claimant is therefore entitled to an award of $5,200.00, less the sum of $303.48, which sum was paid to the claimant for temporary total disability, or a total award of $4,896.52 payable as follows:

$1,171.16 which has accrued from March 5, 1948 to June 17, 1949, from which is deducted the sum of $303.48, making a sum of $867.68, which is payable forthwith;

$4,028.84 to be paid in weekly installments of $17.48 beginning June 24, 1949 for a period of 230 weeks with a final payment of $8.44; thereafter a pension for life in the sum of $416.00 annually, payable in monthly installments of $34.66.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."